UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Stephen G. Patterson, et al., ) | Case No. 1: 10 CV 589 |
| ) | |
| Plaintiffs, ) | JUDGE DONALD C. NUGENT |
| vs. ) | |
| ) | MEMORANDUM OPINION |
| Rite Aid Corp Hdqtrs., ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on Defendant's Motion to Dismiss the Bilateral Class Action Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (ECF #11). For the reasons that follow, Defendant's Motion is granted.

**PROCEDURAL AND FACTUAL BACKGROUND**

Plaintiffs Stephen Patterson and Hyatt Rhine bring this "bilateral class action complaint" against Defendant Rite Aid Hdgqtrs. Corp.[1] ("Rite Aid") on behalf of themselves and all others

---

[1] Plaintiffs bring their claims against Defendant Rite Aid individually and as a representative of a class of similarly situated defendants defined as all pharmacy service providers authorized by the Bureau of Workers Compensation ("BWC") to sell medication to Ohio workers' compensation claimants, who during the period extending as far back as the applicable statute of limitations permits, sold pharmacy products to the Plaintiff Class members at the point of sale as cash customers, and later failed or refused to refund to the Plaintiff Class members the difference between the full amount paid and the amount reimbursed under the BWC fee schedule. (Complaint, ¶51) This Opinion addresses only the claims against named defendant Rite Aid.

similarly situated.[2] (Complaint at 1.) Both Mr. Patterson and Mr. Rhine filed claims with the Ohio Bureau of Workers' Compensation ("BWC") for work related injuries. Mr. Patterson filed his claim on March 20, 1987 and Mr. Rhine filed his claim on November 8, 2002. (Id. at ¶¶20, 30). Between April, 2007 and February, 2009, Mr. Patterson purchased prescription drugs from Rite Aid in connection with his BWC claim. (Id. at ¶21). Mr. Rhine purchased prescription drugs from Rite Aid in connection with his BWC claim between April and August, 2006. (Id. at ¶31) The BWC through its pharmacy benefit manager ("PBM") initially failed to approve Plaintiffs' purchase of prescription drugs through the on-line point of sale adjudication system.(Id. at ¶¶21-22, 31-32).[3] As a result of the initial denial, Plaintiffs purchased the prescription drugs from Rite Aid as point of sale cash customers, paying amounts in excess of the BWC approved charges. (Id. at ¶¶23, 33)

In August, 2009, the BWC/PBM reimbursed Mr. Patterson for some of the prescription drugs he had purchased from Rite Aid between April, 2007 and March, 2009 in the amount allowed under BWC's fee schedule, which was less than the amount Mr. Patterson paid Rite Aid

---

[2] Defendant removed this action from the Court of Common Pleas for Cuyahoga County, Ohio asserting that this Court has jurisdiction under the Class Action Fairness Act of 2005 ("CAFA", 28 U.S.C. § 1332(d)(1)(B) and 28 U.S.C. §1453. Defendant asserts that this class action could have been originally filed in this Court pursuant to 28 U.S.C. § 1332(d) because diversity of citizenship exists between Defendant, a Delaware Corporation with its principle place of business in Pennsylvania, and one or more members of the putative class who are citizens of Ohio. Further, the amount in controversy, in aggregate, exceeds $5,000,000.

[3] Under BWC's outpatient pharmacy benefit program, pharmacists submit drug bills directly to BWC at the point of service through BWC's pharmacy benefit manager ("PBM"). (Complaint, ¶12) In some circumstances the PBM may deny reimbursement in which case the worker must either pay the retail price charged a regular point of sale cash customer or decline to buy the prescription drug.

for the drugs. The difference between the amount reimbursed by the BWC and the amount charged by Rite Aid was $659.16. (Id. at ¶¶ 34-36).

In November, 2007, the BWC/PBM reimbursed Mr. Rhine for some of the prescription drugs he purchased from Rite Aid between April and August, 2006 in the amount allowed under BWC's fee schedule which was less than the amount Mr. Rhine paid Rite Aid for the drugs. The difference between the amount reimbursed by the BWC and the amount charged by Rite Aid was $595.73. (Id. at ¶¶34-36).

Both Plaintiffs requested that Defendant refund the difference between the cash price they paid to Defendant and the BWC scheduled price. In both cases, Defendant refused the refund requests. (Id. at ¶¶27-28, 37-38).

The Complaint sets forth six causes of action: violation of Ohio Rev. Code § 4121.44(K) (Count One); breach of contract (Count Two); unjust enrichment (Count Three); violation of Ohio's Consumer Sales Practices Act, Ohio Rev. Code § 1345.014 *et seq*. (Count Four); money had and received (Count Five); and declaratory and injunctive relief (Count Six).

Defendant has moved to dismiss the complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Plaintiffs have filed a brief in opposition and Defendant has filed a reply brief in support. The motion is now fully briefed and ready for decision.

## STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) allows a defendant to test the legal sufficiency of a complaint without being subject to discovery. *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003). In evaluating a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept its factual

allegations as true, and draw reasonable inferences in favor of the plaintiff. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitations of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S.Ct. 1937,1940 (2009). *See also Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000) (court will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations.)

In order to survive a motion to dismiss, a complaint must provide the grounds of the entitlement to relief, which requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is,"[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citation omitted); *see Association of Cleveland Fire Fighters v. City of Cleveland*, No. 06-3823, 2007 WL 2768285, at *2 (6th Cir. Sept. 25, 2007) (recognizing that the Supreme Court "disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957)"). Accordingly, the claims set forth in a complaint must be plausible, rather than conceivable. *See Twombly*, 550 U.S. at 570.

On a motion brought under Rule 12(b)(6), the court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *See Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008)*; Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

4

**DISCUSSION**

Defendant asserts that each of Plaintiffs' purported claims fails to state a claim upon which relief may be granted. The Court will address each claim in turn.

**1. Violation of Ohio Rev. Code §4121.44(K)**

Plaintiffs allege that Defendant is a health care provider under O.A.C. §4123-6-01(G) and is prohibited under Ohio Rev. Code §4121.44(K) and O.A.C. §4123-6-07 from collecting or assessing from Ohio workers' compensation claimants any amount for covered services in excess of the amount allowed and paid by the BWC. Further, Plaintiffs allege that Rite Aid is not permitted to retain funds for prescription drugs that are in excess of the allowed amount paid by the BWC. (Complaint, ¶¶65-66) Rite Aid's acts allegedly constitute "unlawful balance billing" in violation of §4121.44(K). (Id. at ¶67).

Rite Aid argues that Plaintiffs' claim under §4121.44(K) must be dismissed because §4121.44(K) does not require a health care provider, such as Rite Aid, to make reimbursements and because §4121.44(K) does not provide a private cause of action. §4121.44(K) states:

> No health care provider, whether certified or not, shall charge, assess, or otherwise attempt to collect from an employee, employer, a managed care organization, or the bureau any amount for covered services or supplies that is in excess of the allowed amount paid by a managed care organization, the bureau or a qualified health plan.

Rite Aid contends that §4121.44(K) only applies to "covered services". In this case, Rite Aid sold the prescription drugs to both Plaintiffs as cash customers after the PBM refused to approve the purchases. Thus, at the time of purchase, the prescription drugs were not "covered services" within the meaning of §4121.44(K). Because Plaintiffs' prescription drugs were not covered, Rite Aid and Plaintiffs were free to enter into an express contract for the sale of

5

outpatient medications at the retail price that all other non-covered customers pay. As such, Rite Aid argues, the sale of these prescription drugs did not fall under §4121.44(K). Rite Aid notes that Plaintiffs do not dispute that Rite Aid did not violate §4121.44(K) when the Plaintiffs initially purchased the prescriptions at issue at retail price. It was only when Rite Aid refused to refund the difference between the price paid and the BWC schedule amount after the coverage determination was changed that Plaintiffs allege that §4121.44(K) was violated. However, Defendant stresses that §4121.44(K) does not mandate any such reimbursement, as the terms "reimburse" or "refund" do not appear in the provision. Moreover, to find a reimbursement mandate in the provision the Court would have to read words and an entire statutory program into the statute that does not exist. Defendants point out that under Plaintiffs' proposed statutory scheme, there are numerous unanswered questions and issues such as whether it would be a provider's obligation to track all denied claims and initiate reimbursement if the coverage decision changes or whether it would be a claimant's responsibility to request a refund and under what time frame?

Plaintiffs argue that Rite Aid cannot rely on the initial point of service decision that a particular prescription is not covered because the final decision on a claim lies with the Industrial Commission. Thus, Plaintiffs contend that §4121.44(K) would require a provider to reimburse a plaintiff if the plaintiff's coverage determination is changed. Plaintiffs further note that the statute does not require that a "covered services" determination be made at point of sale. Plaintiffs argue that Rite Aid's interpretation of §4121.44(K) would lead to undesirable results in that providers would be free to "balance bill" injured workers where the worker is adjudicating a disallowed workers' compensation claim. Since the Workers' Compensation Act expressly

6

declares that the worker compensation laws be must liberally construed in favor of employees and the dependents of deceased employees any ambiguities in §4121.44(K) should be resolved in favor of Plaintiffs. See §4123.95. Finally, Plaintiffs argue that Rite Aid's interpretation of §4121.44(K) would render §4121.44(K) unconstitutional because injured workers would be treated differently based on when BWC determines coverage for a particular medical service. There is no rational basis to treat the same covered services differently solely based on when the determination of that coverage occurred.

On its face §4121.44(K) applies only to "covered services". At the time the Plaintiffs purchased their prescriptions from Rite Aid, coverage had been denied by the PBM, thus §4121.44(K) was inapplicable and Rite Aid did not violate the statute. From Rite Aid's point of view the transactions are finished and need not be re-visited. After careful review of the statute, Plaintiffs point to no law or history which overrides the clear fact that §4121.44(K) contains no requirement for providers to go back and re-open transactions that were completed for retail customers who were not subject to §4121.44(K) at the time of their transactions. Plaintiffs' position would require this Court to add requirements and terms to §4121.44(K) that are beyond the purview of a court. Moreover, this interpretation of §4121.44(K) does not violate the Equal Protection Clause of the United States Constitution as §4121.44(K) merely requires all injured workers to get approval for coverage before they purchase prescription drugs as covered claimants.

Moreover, even if Defendant was somehow in violation of §4121.44(K), Defendant argues that Plaintiffs' claim under §4121.44(K) must be dismissed because §4121.44 does not expressly authorize a private right of action. Nor has any court recognized an implied private

cause of action for §4121.44. Plaintiffs contend that this Court should find an implied private cause of action under §4121.44(K). To determine whether a private cause of action arises by implication under a statute, a court should consider the following: (1) whether the plaintiff is a member of the class for whose especial benefit the statute was enacted; (2) whether there is any indication of legislative intent either to create or deny such a remedy; and (3) whether inferring a remedy is consistent with the underlying purposes of the legislative scheme. *Strack* v. *Westfield Companies*, 33 Ohio App.3d 336, 337 (Ohio App. 1986). While the Plaintiffs, as workers compensation claimants, are members of a class for whose especial benefit the statute was enacted, there is no indication of an any legislative intent to create a private remedy under §4121.44(K), however there is indication of intent to deny such a remedy in that the statute provides for state governmental enforcement. See § 4121.444 generally providing penalties for obtaining or attempting to obtain payment by deception; termination of agreement or reimbursement; and § 4121.444(D) empowering the attorney general to bring an action on behalf of the state. See also, *McClain v. Northwest Cmty. Corr. Ctr.*, 440 F.3d 320, 328 (6th Cir. 2006)("[t]he Supreme Court of Ohio has stated that it will not infer the existence of a private cause of action unless the Ohio General Assembly manifests a 'clear implication' for private causes of action.") There is no indication that a private remedy is necessary to enforce the statute. Based upon this analysis, this Court will not be the first to imply a private right of action under §4121.44(K). Accordingly, Plaintiffs' claim under §4121.44(K) is dismissed.

**2. Breach of Contract**

Plaintiffs allege that Rite Aid and BWC/PBM entered into a contract whereby Rite Aid agreed to provide prescription drugs to BWC claimants, including Plaintiffs, and BWC/PBM

8

agreed to pay Rite Aid a pre-negotiated rate for all covered prescription drugs. (Complaint, ¶71) Plaintiffs allege that Rite Aid breached the contract by "balance billing" claimants for amounts in excess of the contractually agreed amount owed for prescription drugs. (Id. at ¶73)  Plaintiffs further allege that they are intended third party beneficiaries of the contract and are entitled to bring suit for its violation. (Id. at ¶72).

Defendant asserts that Plaintiffs are not third party beneficiaries under the contract, however, even if they were, there is no provision in the applicable contract, called the Member Pharmacy Agreement, that requires Rite Aid to reimburse workers who are initially denied coverage by the PBM.  Defendant has attached a copy of the Member Pharmacy Agreement at issue to its motion to dismiss.  As the Member Pharmacy Agreement is the contract at issue in Plaintiffs' breach of contract claim in Count Two of the Complaint, the Court may properly consider all the terms of the contract even though Plaintiffs did not attach it to the Complaint. *See Weiner v. Klais & Co., Inc*., 108 F.3d 86, 89 (6th Cir. 1997); *Wolper v. Hotel Europe*, 552 F.Supp.2d 687, 690-91 (N.D. Ohio 2008).

Rite Aid states that under the Member Pharmacy Agreement, Rite Aid is only responsible for providing an "eligible Injured Worker those Covered Services in accordance with the benefit plan descriptions provided by BWC to ACS...." (ECF #11, Ex. 1 at 002) When the Plaintiffs purchased the prescriptions at issue, they were not eligible under the Agreement as the PBM had denied coverage.  Exhibit B of the Member Pharmacy Agreement states: "Denied claims: For claims in a denied status . . . ACS notifies the pharmacist prior to the dispensing of the prescribed medication that the payment for the drug will not be made by BWC . . ." (ECF #11, Ex.1 at 011) Thus, as in this case, Rite Aid was notified that the Plaintiffs' claims were denied

9

and that BWC would not pay for the prescription drugs. Rite Aid therefore charged the Plaintiffs the retail price.

Exhibit B of the Member Pharmacy Agreement then addresses reimbursement liability:

> All bills for outpatient medications are paid per BWC schedule (ORC 4123-6-21), so in cases where the injured worker has paid for a drug at a pharmacy and then seeks reimbursement from BWC/ACS, **the injured worker is liable for any difference in the amount paid by the injured worker and the amount reimbursed**.

(ECF #11, Ex. 1 at 021) (emphasis added).  Thus, it appears from the face of the Member Pharmacy Agreement that Rite Aid did not breach the Agreement by failing to reimburse Plaintiffs and Plaintiffs breach of contract claim fails.  In their Opposition to Defendant's Motion to Dismiss, Plaintiffs state that "Plaintiffs' claim for breach of contract can be dismissed." Accordingly, Plaintiffs' Breach of Contract Claim (Count 2) is dismissed.

### 3. Plaintiffs' Unjust Enrichment and Money Had and Received Claims

Defendant moves to dismiss Plaintiffs' unjust enrichment and money had and received claims on the ground that such claims cannot exist where there is a valid and enforceable express contract.  *See Kincaid v. Erie Ins. Co.*, 183 Ohio App.3d 748 (Ohio App. 2009) (Under Ohio law, "unjust enrichment cannot exist where there is a valid and enforceable written contract"); City of *Elyria, Ohio v. York Int'l Corp*., No. 1-03-cv-2079, 2005 WL 1353871, at *4 (N.D. Ohio June 7, 2005) ("As a rule, an unjust enrichment claim is not recognized if plaintiffs also seek recovery under a valid contract"); *Quadtek, Inc. v. Foister*, No. 04-09-112, 2005 WL 1939769 at *4 (Ohio App. Aug. 15, 2005)("[A] party to an express agreement may not bring a claim for unjust enrichment . . . when the express agreement contains a provision governing the allegedly inequitable conduct of the other party.") See also, *U.S.A. Parking System, Inc. v. Piney Bowes*

*Global Fin. Services,* No. 1-09-cv-2274, 2010 WL 918093, at *4 (N.D. Ohio March 10, 2010)("An action for money had and received is a claim in quasi-contract which, in turn, is based upon the equitable doctrine of unjust enrichment. . . . It is well settled that a party may not recover in quasi-contract in the face of an express contract governing the same subject matter.")

While the Member Pharmacy Agreement covers reimbursement, the Plaintiffs are not a party, or at least in Defendant's view, third party beneficiaries to that contract, thus that express contract would not act to bar Plaintiffs' equitable claims. However, Plaintiffs in this case purchased prescription drugs from Rite Aid while they were not eligible injured workers under the Agreement.  At that point, Rite Aid was not required by the Agreement or §4121.44(K) to sell the prescription drugs to Plaintiffs at the amounts listed in the BWC fee schedule.  Rather, Rite Aid and Plaintiffs were free to enter into separate, express contracts between Rite Aid and Plaintiffs as cash customers for the sale of the medications at the retail price and that is what they did. Thus, Plaintiffs' unjust enrichment and money had and received claims are dismissed because express contracts govern the subject matter.

**4. Consumer Sales Practices Act Claim**

In Count 4 of the Complaint Plaintiffs purport to assert a claim for violation of Ohio's Consumer Sales Practices Act, Ohio Rev. Code §1345.014, *et seq*.  Plaintiffs assert that Defendant has engaged in unfair and deceptive acts in connection with the sale of prescription drugs to workers' compensation claimants by improperly collecting and retaining monies paid for the prescription drugs that they are not contractually or legally entitled to retain and for balance billing. (Complaint, ¶ 86) Further, Plaintiffs allege that Defendant engaged in unconscionable consumer sales acts and practices by improperly charging and retaining monies

11

for prescription drugs in excess of what Defendants are contractually and/or legally entitled to charge. (Id. at ¶87).

Defendants argue that Plaintiffs' claim that Rite Aid violated the Ohio Consumer Sales Practices Act must be dismissed because the complaint fails to allege any facts demonstrating that Rite Aid engaged in a deceptive act or misrepresentation, knowingly or otherwise or committed an unconscionable act.  See §1345.02, 1345..03.  Rite Aid notes that since Plaintiffs do not allege that Rite Aid made a misrepresentation to Plaintiffs or that they were deceived by Rite Aid or by any act of Rite Aid they do not allege a claim under § 1345.02.

Plaintiffs' opposition to Defendant's Motion to Dismiss does not address Defendant's contention that this claim should be dismissed.  Rite Aid thus contends that Plaintiffs concede that Rite Aid neither engaged in a deceptive act or misrepresentation nor committed an unconscionable act.  In any event, the Court finds that Plaintiffs failed to state a claim that Defendant  violated the Ohio Consumer Sales Practices Act. Accordingly, Count 4 of the Complaint is dismissed.

### 5. Claim for Declaratory and Injunctive Relief

Finally, Plaintiffs seek declaratory and injunctive relief finding that Defendant's alleged balance billing is unlawful and enjoining Defendant from continuing to engage in such billing.  However, as the Court has determined that Rite Aid's billing of Plaintiffs with respect to the prescription drugs at issue did not violate the Member Pharmacy Agreement or Ohio law and has dismissed those claims, Plaintiffs' claims for declaratory and injunctive relief based upon the same conduct must be dismissed.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss the Bilateral Class Action Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (ECF #11) is GRANTED.

IT IS SO ORDERED.

                                               *Donald C. Nugent*
                                               DONALD C. NUGENT
                                               UNITED STATES DISTRICT JUDGE

DATED:   September 22, 2010